1  KAREN P. HEWITT
   United States Attorney
2  JOSEPH J.M. ORABONA
   Assistant U.S. Attorney
3  California State Bar No. 223317
   Federal Office Building
4  880 Front Street, Room 6293
   San Diego, California  92101-8893
5  Telephone: (619) 557-7736
   Email: joseph.orabona@usdoj.gov
6
   Attorneys for Plaintiff
7  United States of America

8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10  UNITED STATES OF AMERICA,          )   Criminal Case No. 08CR0972-WQH
                                       )
11              Plaintiff,             )   Date:  May 19, 2008
                                       )   Time:  2:00 p.m.
12                                     )
         v.                            )   The Honorable William Q. Hayes
13                                     )
                                       )
14  DENISE PELAYO-HERNANDEZ (3),       )   **UNITED STATES' RESPONSE IN
                                       )   OPPOSITION TO DEFENDANT'S
15              Defendant.             )   MOTIONS TO**
                                       )
16                                     )   **1)   COMPEL DISCOVERY;
                                       )   2)   PRECLUDE PROSECUTION FROM
17                                     )        PROCEEDING UNDER AN AIDING
                                       )        AND ABETTING THEORY;
18                                     )   3)   SUPPRESS EVIDENCE; AND
                                       )   4)   LEAVE TO FILE FURTHER
19                                     )        MOTIONS**
                                       )
20                                     )   **TOGETHER WITH STATEMENT OF
                                       )   FACTS, MEMORANDUM OF POINTS AND
21                                     )   AUTHORITIES**
                                       )
22  _____ )

23        The plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt,

24  United States Attorney, and Joseph J.M. Orabona, Assistant United States Attorney, hereby files its

25  Response in Opposition to Defendant Denise Pelayo-Hernandez's above-referenced Motions.  This

26  Response in Opposition is based upon the files and records of the case, together with the attached

27  statement of facts and memorandum of points and authorities.

28  / /

# I

## STATEMENT OF THE CASE

On April 9, 2008, a federal grand jury in the Southern District of California returned a three-count Indictment charging Ramon Vasquez-Cabrales, Bernice Pelayo-Hernandez, and Denise Pelayo-Hernandez with transportation of illegal aliens and aiding and abetting, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and (v)(II). On April 10, 2008, Defendants were arraigned on the Indictment and each Defendant pled not guilty. On April 30, 2008, Defendant Denise Pelayo-Hernandez ("Defendant Pelayo") filed motions to compel discovery and leave to file further motions. The United States files the following response in opposition to Defendant Pelayo's motions.

# II

## STATEMENT OF FACTS

### A.     OFFENSE CONDUCT

#### 1.     Events Leading To Apprehension

On March 25, 2008, Border Patrol Agents were assigned to patrol duties near Boulevard, California in marked vehicles. Boulevard, California, is approximately five miles north of the U.S.-Mexico international border and approximately twenty miles east of Tecate, California, Port of Entry. At approximately 9:57 p.m., agents observed a white Ford F-150 pickup truck traveling northbound with the driver and passenger visible and the truck appeared heavily laden as it bounced excessively. Agents followed the truck onto Interstate 8. Agents performed a registration check and learned the truck was registered with a release of liability. In the agents experience, illegal alien and drug smugglers use vehicles with a release of liability in order to conceal the identity of the true owner of the vehicle. Agents pulled alongside the truck and observed the driver, later identified as Ramon Vasquez-Cabrales, and observed a tarp covering the bed area of the pickup truck. The truck exited the freeway and turned into a driveway with a locked gate. While the truck was stopped, agents observed several people moving around underneath the tarp in the back of the truck. Agents exited their vehicles and approached the truck, where they found the driver and nine individuals – one in the passenger seat, one on the floorboard, and seven laying down underneath the tarp in the bed of the truck. All nine individuals freely admitted to being citizens and nationals of Mexico without any documentation to enter or legally

1  remain in the United States.  All nine individuals were arrested and transported for processing.

2      At approximately 11:00 p.m., Border Patrol agents assigned to the Highway 94 checkpoint in

3  Jamul, California, encountered two females, later identified as Bernice Pelayo-Hernandez and Denise

4  Pelayo-Hernandez, approach the primary lanes in a gold Dodge Intrepid.  Both females claimed to be

5  United States citizens, but the driver, Bernice Pelayo-Hernandez, did not have any identification and

6  was referred to secondary inspection for further checks.

7      While in the secondary area, Bernice Pelayo-Hernandez told agents that she had come directly

8  from Tecate, Mexico, and that she had been in Mexico.  However, records checks revealed that the car

9  driven by Bernice Pelayo-Hernandez had not crossed into the United States from Mexico within the last

10  72 hours.  Bernice Pelayo-Hernandez freely admitted that she contacted a friend, named

11  "Ramon/Eduardo" to work as a scout for alien smuggling.  Her role was to drive past the Golden Acorn

12  Casino and let "Ramon/Eduardo" know whether the area was clear of Border Patrol and California

13  Highway Patrol.  Bernice Pelayo-Hernandez said she had not be contacted and so she assumed that the

14  vehicle for which she was a scout had been caught.  Agents arrested Bernice and Denise Pelayo-

15  Hernandez for alien smuggling.

16          **2.    Post-Arrest Statements**

17      Agents advised Bernice Pelayo-Hernandez of her <u>Miranda</u> rights, she acknowledged she

18  understood her rights, and agreed to waive her rights and speak with agents without the presence of

19  counsel.  Bernice Pelayo-Hernandez, who is a citizen of the United States, said she had been contacted

20  several times in the past week by a man to see whether she would work as a scout driver for an alien

21  smuggling vehicle.  She told agents that she met the man only once and that she and her sister, Denise,

22  have smuggled aliens for the man in the past.  On this occasions, she was to be paid $200.00.  Bernice

23  Pelayo-Hernandez also told agents that her sister, Denise, had the registration to the pickup truck, which

24  was driven by co-defendant Ramon Vasquez-Cabrales, in her purse in the event that they had to unload

25  the aliens before the checkpoint, have the aliens walk around the checkpoint, while Bernice and Denise

26  drove the empty truck through the checkpoint to the pickup area on the other side.

27      Agents advised Denise Pelayo-Hernandez of her <u>Miranda</u> rights, she acknowledged she

28  understood her rights, and agreed to waive her rights and speak with agents without the presence of

counsel. Denise Pelayo-Hernandez, who is a citizen of the United States, agreed to accompany her sister, Bernice, as a scout driver for an alien smuggling vehicle. Denise Pelayo-Hernandez said that their job was to drive to the Border Patrol checkpoint on Highway 94 to see whether it was operational and communicate with the smugglers. Denise Pelayo-Hernandez admitted that her sister, Bernice, gave her the registration to the pickup truck, which was driven by co-defendant Ramon Vasquez-Cabrales. Denise Pelayo-Hernandez told agents that she did not know why her sister gave her the paperwork.

### 3.    Material Witness Statements

Material Witnesses Eduardo Reyes-Rodriguez, Juan Carlos Yepez-Yepez, and Ramon Torres-Silva (collectively "Material Witnesses"), freely admitted to being citizens and nationals of Mexico without any documentation to enter or remain legally in the United States. Material Witnesses admitted that they were going to pay between $1,300 and $1,500 to be smuggled into the United States and transported to their destination therein. Material Witness Eduardo Reyes-Rodriguez, was shown a photographic lineup and was able to identify Defendant Vasquez-Cabrales as the driver of the truck.

### B.    DEFENDANTS' CRIMINAL AND IMMIGRATION HISTORIES

Ramon Vasquez-Cabrales is a citizen and national of Mexico. Defendant Vasquez-Cabrales does not have any prior criminal convictions, however, he has been apprehended before by Border Patrol on or about February 11, 2008. Defendant Vasquez-Cabrales was removed to Mexico shortly thereafter.

Bernice Pelayo-Hernandez is a citizen of the United States. She has no prior criminal convictions, but she has several prior apprehensions for alien smuggling at the San Ysidro, California, Port of Entry and at the Border Patrol Checkpoint on Highway 94 on or about: (1) March 4, 2004; (2) December 5, 2005; (3) November 16, 2007; and (4) January 21, 2008.

Denise Pelayo-Hernandez is a citizen of the United States. She has no prior criminal convictions, but she has several prior apprehensions for alien smuggling, on the same days as her sister, Bernice, at the San Ysidro, California, Port of Entry and at the Border Patrol Checkpoint on Highway 94 on or about: (1) March 4, 2004; and (2) January 21, 2008.

//

//

1

### III

2

**THE UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS
ALONG WITH MEMORANDUM OF POINTS AND AUTHORITIES**

3

4

### A.     DEFENDANT'S MOTION TO COMPEL DISCOVERY SHOULD BE DEINED

5

As of the date of this Motion, the United States has produced 136 pages of discovery (including

6

reports of the arresting officers and agents, criminal history reports, documents concerning Defendant

7

Pelayo's prior convictions and immigration history) and one DVD-ROM containing each Defendant

8

Pelayo's videotaped, post-arrest statements.  The United States will continue to comply with its

9

obligations under Brady v. Maryland, 373 U.S. 83 (1963), the Jenks Act (18 U.S.C. §3500 et seq.), and

10

Rule 16 of the Federal Rules of Criminal Procedure ("Fed. R. Crim. P.").  At this point the United

11

States has received **no** reciprocal discovery.  In view of the below-stated position of the United States

12

concerning discovery, the United States respectfully requests the Court issue no orders compelling

13

specific discovery by the United States at this time.

14

### 1.     Defendant's Statements

15

The United States has turned over a number of investigative reports, including those which

16

disclose the substance of Defendant Pelayo's oral statements made in response to routine questioning

17

by United States' law enforcement officers.  If additional reports by United States' agents come to light,

18

the United States will supplement its discovery.  The United States recognizes its obligations under Fed.

19

R. Crim. P. 16(a)(1)(A) to disclose "the substance of any relevant oral statement made by the

20

defendant, before or after arrest, in response to interrogation by a person the defendant knew was a

21

government agent if the government intends to use the statement in trial."  However, the United States

22

is not required under Fed. R. Crim. P. 16 to deliver oral statements, if any, made by a defendant to

23

persons who are not United States' agents.  Nor is the United States required to produce oral statements,

24

if any, voluntarily made by a defendant to United States' agents.  See United States v. Hoffman, 794

25

F.2d 1429, 1432 (9th Cir. 1986); United States v. Stoll, 726 F.2d 584, 687-88 (9th Cir. 1984).  Fed. R.

26

Crim. P. 16 does not require the United States to produce statements by Defendant Pelayo that it does

27

not intend to use at trial.  Moreover, the United States will not produce rebuttal evidence in advance of

28

trial.  See Givens, 767 F.2d at 584.

1    The United States also objects to Defendant Pelayo's request for an order for production of any

2    rough notes of United States' agents that may exist.   Production of these notes, if any exist, is

3    unnecessary because they are not "statements" within the meaning of the Jencks Act unless they contain

4    a substantially verbatim narrative of a witness' assertions and they have been approved or adopted by

5    the witness.  See discussion infra Part III.A.19; see also United States v. Alvarez, 86 F.3d 901, 906 (9th

6    Cir. 1996); United States v. Bobadilla-Lopez, 954 F.2d 519, 522 (9th Cir. 1992).  The production of

7    agents' notes is not required under Fed. R. Crim. P. 16 because the United States has "already provided

8    defendant with copies of the formal interview reports prepared therefrom." United States .v Griffin, 659

9    F.2d 932, 941 (9th Cir. 1981).  In addition, the United States considers the rough notes of its agents to

10   be United States' work product, which Fed. R. Crim. P. 16(a)(2) specifically exempts from disclosure.

11   Defendant Pelayo also requests an order directing the United States to permit her to inspect and

12   copy "any statements of any co-defendant or co-conspirator, material witness, or confidential

13   information that the government intends to offer against defendant under Fed. R. Evid. 801(d)(2)(E)."

14   [Def. Motion at 4.]  First, Defendant Pelayo fails to cite a rule of discovery that requires the production

15   of co-defendant or co-conspirator statements prior to trial.  Rather, Defendant Pelayo cites to the

16   admissibility of such statements by relying on a rule of evidence.  Second, and most importantly, the

17   Jencks Act limits compulsory pretrial discovery of statements made by prospective government

18   witnesses and makes them unavailable until such witnesses have testified at trial. United States v.

19   Griffin, 659 F.2d 932, 936 (9th Cir.1981).  Thus, even assuming the co-defendants were government

20   witnesses, the Jencks Act provides that the United States would not have to produce any such statements

21   prior to their direct testimony at trial. United States v. Taylor, 802 F.2d 1108, 1118 (9th Cir. 1986);

22   United States v. Walk, 533 F.2d 417 (9th Cir. 1975) (holding that the Jencks Act prohibits the pretrial

23   disclosure of witness' statements, even when such statements contain quotations allegedly attributable

24   to defendant, and that such statements may only be produced in accordance with provisions of the

25   Jencks Act); see also United States v. Percevault, 490 F.2d 126 (2d Cir. 1974) (holding that defendant's

26   pretrial discovery of the statements of co-defendants or co-conspirators is precluded under the Jencks

27   Act); United States v. McMillen, 489 F.2d 229 (7th Cir. 1972) (same).  As such, the United States

28   objects to this request.  The United States will comply with its obligations under the Jencks Act.

### 3.    <u>Documents and Tangible Objects</u>

The United States has complied and will continue to comply with Fed. R. Crim. P. 16(a)(1)(E) in allowing Defendant Pelayo an opportunity, upon reasonable notice, to examine, inspect, and copy all evidence seized and/or tangible objects that are within the possession, custody, or control of the United States, and that are either material to the preparation of Defendant Pelayo's defense, or are intended for use by the United States as evidence during its case-in-chief, or were obtained from or belongs to Defendant Pelayo. The United States need not, however, produce rebuttal evidence in advance of trial. See <u>United States v. Givens</u>, 767 F.2d 574, 584 (9th Cir. 1984).

### 4.    <u>Reports of Scientific Tests or Examinations</u>

The United States will provide Defendant with any scientific tests or examinations, in accordance with Fed. R. Crim. P. 16(a)(1)(F).

### 5.    <u>Expert Witnesses</u>

The United States has complied and will continue to comply with Fed. R. Crim. P. 16(a)(1)(G) and provide Defendant with notice and a written summary of any expert testimony that the United States intends to use during its case-in-chief at trial under Fed. R. Evid. 702, 703, or 705.

### 6.    <u>*Brady* Material</u>

The United States has complied and will continue to comply with its obligations under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). Under <u>Brady</u> and <u>United States v. Agurs</u>, 427 U.S. 97 (1976), the government need <u>not</u> disclose "every bit of information that might affect the jury's decision." <u>United States v. Gardner</u>, 611 F.2d 770, 774-75 (9th Cir. 1980). The standard for disclosure is materiality. <u>Id</u>. "Evidence is material under <u>Brady</u> only if there is a reasonable probability that the result of the proceeding would have been different had it been disclosed to the defense." <u>United States v. Antonakeas</u>, 255 F.3d 714, 725 (9th Cir. 2001).

The United States will also comply with its obligations to disclose exculpatory evidence under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). Furthermore, impeachment evidence may constitute <u>Brady</u> material "when the reliability of the witness may be determinative of a criminal defendant's guilt or innocence." <u>United States v. Blanco</u>, 392 F.3d 382, 387 (9th Cir. 2004) (internal quotation marks omitted). However, the United States will not produce rebuttal evidence in advance of trial. See <u>United</u>

1  States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

2      Defendant Pelayo also requests evidence tending to show (1) bias or prejudice against Defendant

3  Pelayo; (2) motive to falsify or distort his/her testimony; (3) inability to perceive, remember,

4  communicate, or tell the truth; or (4) has used narcotics or other controlled substances, or has been an

5  alcoholic. [Def. Motion at 6.]  The United States recognizes its obligation to provide information related

6  to the bias, prejudice or other motivation of United States' trial witnesses as mandated in Napue v.

7  Illinois, 360 U.S. 264 (1959).  The United States will provide such impeachment material in its

8  possession, if any exists, at the time it files its trial memorandum.  At this time, the United States is

9  unaware of any prospective witness that is biased or prejudiced against Defendant or that has a motive

10  to falsify or distort his or her testimony.  The United States is unaware of any evidence that any United

11  States witness' ability to perceive, recollect, communicate or tell the truth is impaired.

12      The United States will comply with its obligations to disclose impeachment evidence under

13  Giglio v. United States, 405 U.S. 150 (1972).  Moreover, the United States will disclose impeachment

14  evidence, if any exists, when it files its trial memorandum, although it is not required to produce such

15  material until after its witnesses have testified at trial or at a hearing.  See United States v. Bernard, 623

16  F.2d 551, 556 (9th Cir. 1979).

17  **7.    Request for Preservation of Evidence**

18      The United States will preserve all evidence pursuant to an order issued by this Court.  The

19  United States objects to an overbroad request to preserve all physical evidence.  The United States does

20  not oppose Defendant Pelayo's request to inspect the firearm and ammunition possessed by and seized

21  from Defendant Pelayo in the instant offense.

22  **8.    Any Proposed 404(b) or 609 Evidence**

23      The United States has complied and will continue to comply with its obligations under

24  Rules 404(b) and 609 of the Federal Rules of Evidence ("Fed. R. Evid.").  The United States has already

25  provided Defendant Pelayo with a copy of his criminal record, in accordance with Fed. R. Crim. P.

26  16(a)(1)(D).

27      Furthermore, pursuant to Fed. R. Evid. 404(b) and 609, the United States will provide Defendant

28  Pelayo with reasonable notice before trial of the general nature of the evidence of any extrinsic acts that

1  it intends to use at trial.  See FED. R. EVID. 404(b), advisory committee's note ("[T]he Committee opted

2  for a generalized notice provision which requires the prosecution to appraise the defense of the general

3  nature of the evidence of extrinsic acts.  The Committee does not intend that the amendment will

4  supercede other rules of admissibility or disclosure[.]").

### 9.    Witness Addresses

6  The United States objects to Defendant Pelayo's request for witness addresses and phone

7  numbers.  Defendant Pelayo is not entitled to the production of addresses or phone numbers of possible

8  witnesses for the United States.  See United States v. Hicks, 103 F.3d 837, 841 (9th Cir. 1996); United

9  States v. Thompson, 493 F.2d 305, 309 (9th Cir. 1977), cert denied, 419 U.S. 834 (1974).  None of the

10  cases cited by Defendant Pelayo, nor any rule of discovery, requires the United States to disclose

11  witness addresses.  There is no obligation for the United States to provide addresses of witnesses that

12  the United States intends to call or not call.  Therefore, the United States will not comply with this

13  request.

14  The United States will produce the names of witnesses it intends to call at trial.  Defendant

15  Pelayo has already received access to the names of potential witnesses through the discovery sent to his

16  counsel. The United States is not aware of any individuals who were witnesses to Defendant Pelayo's

17  offense except the law enforcement agentes who apprehended her.  The names of these individuals have

18  already been provided to Defendant Pelayo.

### 10.    Jencks Act Material

20  The United States will fully comply with its discovery obligations under the Jencks Act.  For

21  purposes of the Jencks Act, a "statement" is (1) a written statement made by the witness and signed or

22  otherwise adopted or approved by her, (2) a substantially verbatim, contemporaneously recorded

23  transcription of the witness' oral statement, or (3) a statement by the witness before a grand jury. See

24  18 U.S.C. § 3500(e).  Notes of an interview only constitute statements discoverable under the Jencks

25  Act if the statements are adopted by the witness, as when the notes are read back to a witness to see

26  whether or not the government agent correctly understood what the witness said.  United States v.

27  Boshell, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)).

28  In addition, rough notes by a government agent "are not producible under the Jencks Act due to the

1    incomplete nature of the notes." United States v. Cedano-Arellano, 332 F.3d 568, 571 (9th Cir. 2004).

2        Production of this material need only occur after the witness making the Jencks Act statements

3    testifies on direct examination.  See United States v. Robertson, 15 F.3d 862, 873 (9th Cir. 1994).

4    Indeed, even material that is potentially exculpatory (and therefore subject to disclosure under Brady)

5    need not be revealed until such time as the witness testifies on direct examination if such material is

6    contained in a witness's Jencks Act statements.  See United States v. Bernard, 623 F.2d 551, 556 (9th

7    Cir. 1979).  Accordingly, the United States reserves the right to withhold Jencks Act statements of any

8    particular witness it deems necessary until after they testify.

9            **11.    Residual Request**

10        As already indicated, the United States will continue to comply with its discovery obligations

11    in a timely manner.

12            **12.    _Henthorn_ Materials**

13        The United States has complied and will continue to comply with United States v. Henthorn, 931

14    F.2d 29 (9th Cir. 1991) by requesting that all federal agencies involved in the criminal investigation and

15    prosecution review the personnel files of the federal law enforcement inspectors, officers, and special

16    agents whom the United States intends to call at trial and disclose information favorable to the defense

17    that meets the appropriate standard of materiality.  See United States v. Booth, 309 F.3d 566, 574 (9th

18    Cir. 2002) (citing United States v. Jennings, 960 F.2d 1488, 1489 (9th Cir. 1992)).  If the materiality

19    of incriminating information in the personnel files is in doubt, the information will be submitted to the

20    Court for an in camera inspection and review.

21        Defendant's request that the specific prosecutor in this case review the personnel files is

22    unwarranted and unnecessary.  Henthorn expressly provides that it is the "government," not the

23    prosecutor, which must review the personnel files.   Henthorn, 931 F.2d at 30- 31.  Accordingly, the

24    United States will utilize its typical practice for review of these files, which involves requesting

25    designated representatives of the relevant agencies to conduct the reviews.  The United States opposes

26    the request for an order that the prosecutor personally review the personnel files.

27    / /

28    / /

10

1

**B.    DEFENDANT'S MOTION TO PRECLUDE AN AIDING AND ABETTING THEORY HAS BEEN FORECLOSED BY NINTH CIRCUIT PRECEDENT**

2

3    Defendant Pelayo argues that the United States should be precluded from proceeding under an

4  aiding and abetting theory, because it was not alleged in the indictment.  The judges in this district have

5  routinely rejected the exact motion raised by Defendant Pelayo – to preclude an aiding and abetting

6  theory in alien smuggling cases.  <u>See, e.g.</u>, December 9, 2005 Order of Judge William Q. Hayes

7  Denying Defendant's Motion to Preclude Government From Proceeding on Aiding and Abetting Theory

8  on Any Counts, <u>United States v. De Orta</u>, Criminal Case No. 05CR2036-WQH, at Clerk's Record 28;

9  September 7, 2004 Order of Judge Marilyn L. Huff Denying Defendant's Motion To Preclude

10  Government From Proceeding on Aiding and Abetting Theory, <u>United States v. Garcia</u>, Criminal Case

11  No. 04CR1716-H, at Clerk's Record 15.

12    It is well-settled in the Ninth Circuit that "[a]iding and abetting may be implied in every

13  substantive federal offense."  <u>United States v. Vaandering</u>, 50 F.3d 696, 702 (9th Cir. 1995); <u>United</u>

14  <u>States v. Armstrong</u>, 909 F.2d 1238, 1241 (9th Cir. 1990); <u>United States v. Gaskins</u>, 849 F.2d 454, 459

15  (9th Cir. 1988); <u>United States v. Michaels</u>, 796 F.2d 1112, 1117-18 (9th Cir. 1986); <u>see also</u> <u>United</u>

16  <u>States v. Garcia</u>, 400 F.3d 816, 820 (9th Cir.) ("We have also held a number of times. . .that aiding and

17  abetting is embedded in every federal indictment for a substantive crime."), <u>cert. denied</u>, 126 S. Ct. 839

18  (2005).  As such, it is equally settled that the theory need not even be alleged, and that, if it is, the

19  allegation is surplusage.  <u>United States v. Cannon</u>, 993 F.2d 1439, 1442 (9th Cir. 1993) (holding that

20  "[e]very indictment for a federal offense charges the defendant as a principal and as an aider and abettor;

21  thus a count for aiding and abetting is unnecessary"); <u>Armstrong</u>, 909 F.2d at 1241 (both subsections

22  of 18 U.S.C. § 2 are implied in every "indictment, whether or not they have been specifically charged");

23  <u>United States v. Roselli</u>, 432 F.2d 879, 895 n.27 (9th Cir. 1970) ("An accused charged with an offense

24  may be convicted on evidence showing that he aided and abetted another in the commission of that

25  offense, even though the indictment does not allege this theory of liability; hence the language of the

26  indictment charging him with aiding and abetting was simply surplusage.").

27    If aiding and abetting need not be charged at all, it follows that the individual elements of that

28  theory – including specific intent – need not be charged.  This Court, in fact, has held as much.  <u>Ellis</u>

v. United States, 321 F.2d 931, 932 (9th Cir. 1963) (refusing to dismiss indictment because aiding and abetting counts did not allege the means or method used by defendant to aid and abet the principals; "Such allegations are not necessary."); Grant v. United States, 291 F.2d 746, 749 (9th Cir. 1961) (reaching same conclusion as to mens rea of aiding and abetting; "It is not necessary to allege that one 'knowingly' abetted. . . . One need not even be charged as an aider and abettor in order to be held as one.") (citations omitted).

In Armstrong, the court held that 18 U.S.C. § 2 does not define a substantive offense and does not even need to be alleged in an indictment. See Armstrong, 909 F.2d at 1241 ("Aiding and abetting is implied in every federal indictment for a substantive offense," even though the elements necessary to convict a defendant as a principal and as an aider and abetter are different.). Even if the aiding and abetting statute had not been included in the indictment (and the statute reference is in fact included in the indictment), the United States would be free to argue an aiding and abetting theory to the jury, regardless of the substantive charges. See Michaels, 796 F.2d at 1118. Once the indictment is returned, Armstrong, Gaskins, and Michaels mandate that aiding and abetting is embodied in full for all the charges contained therein.

The Ninth Circuit recently restated these principles in United States v. Garcia, 400 F.3d 816 (9th Cir. 2005). There, the court denied a claim that an indictment was duplicitous because it stated both substantive alien smuggling offenses (under 8 U.S.C. § 1324), as well as the general aiding and abetting statute (18 U.S.C. § 2). See Garcia, 400 F.3d at 817. "Simply put, Garcia's position is that the elements of aiding and abetting are different from the elements of smuggling or transporting an alien because the latter is a general intent crime while the former requires specific intent." Id. at 818. The court rejected that claim, noting that aiding and abetting was implied in every federal indictment, and was "simply one means of committing a single crime." Id. at 819-20.

As noted above, Ninth Circuit precedent holds that failure to recite the specific intent element of aiding and abetting does not render the indictment defective. As such, Defendant Pelayo's motion to preclude the prosecution from proceeding on an aiding and abetting theory should be denied.

/ /

/ /

1

2

## C.    DEFENDANT'S MOTION TO SUPPRESS SHOULD BE DENIED BECAUSE THERE WAS NO VIOLATION OF THE FOURTH AMENDMENT

Defendant contends that the investigatory stop that preceded Defendant's incriminating statements was unconstitutional.  According to Defendant, the agents at the checkpoint did not have reasonable suspicion to question Defendants Bernice or Denise Pelayo-Hernandez about anything other than her citizenship. [Def. Mot. at 15-18.]  Defendant's assertion is contrary to the law. The brief detention of Defendants Bernice and Denise Pelayo-Hernandez and the subsequent search of the vehicle did not violate the Fourth Amendment. First, the initial stop of Defendants Bernice and Denise Pelayo-Hernandez at the checkpoint was lawful without any articulable suspicion under well-established Supreme Court precedent.  Second, Defendant Bernice Pelayo-Hernandez's lack of identification, particularly as the driver of the vehicle, provided the minimal articulable suspicion required by Ninth Circuit case law to briefly extend the checkpoint stop beyond the immigration inquiries.  During the secondary inspection, Bernice Pelayo-Hernandez freely admitted that she had been contacted by a friend to work as a scout for alien smuggling.    Finally, the search of the vehicle was a valid search incident to arrest.  All three stages of the encounter between Defendant and the Border Patrol agents here comported with the Fourth Amendment

### 1.    The Initial Stop at the Checkpoint Was Valid

The Fourth Amendment to the Constitution requires that all searches and seizures be reasonable. See City of Indianapolis v. Edmund, 531 U.S. 32, 37 (2000).  Some searches and seizures fit this reasonableness standard without any articulable suspicion whatsoever.  It is well settled, for example, that "brief, suspicionless seizures of motorists at a fixed Border Patrol checkpoint designed to intercept illegal aliens" are constitutionally permissible.  United States v. Martinez-Fuerte, 428 U.S. 543 (1976); United States v. Bulacan, 156 F.3d 963, 972-73 (9th Cir. 1998) (no individualized suspicion required for routine questioning at fixed border checkpoints).  The Supreme Court has emphasized the "difficulty of effectively containing illegal immigration at the border itself" in allowing such checkpoints. Edmund, 531 U.S. at 38.  In addition, the "impracticality of the particularized study of a given car to discern whether it was transporting illegal aliens, as well as the relatively modest degree of intrusion entailed by the stops" proved important to their reasonableness.  Id.

13

1    Border protection, thus, serves as a principal reason for the Supreme Court's allowance of

2    immigration checkpoints.  In fact, the Supreme Court considers decisions regarding Border Patrol

3    checkpoints among its jurisprudence relating to the "longstanding concern for the protection of the

4    integrity of the border." United States v. Montoya de Hernandez, 473 U.S. 531, 538 (1985) (noting that

5    although the stops at Border Patrol checkpoints do not physically take place at the border, those

6    checkpoints are near the border and serve a border control function); Edmund, 531 U.S. at 43 (proximity

7    of the checkpoint to the border in Martinez-Fuerte was a "crucial" fact in that decision).

8    Other approved checkpoints also involve some governmental interest besides general crime

9    intervention.  See Michigan Dept. of State Police v. Sitz, 496 U.S. 444 (1990) (affirming the

10   constitutionality of a sobriety checkpoint program by noting the state's interest in highway safety);

11   Delaware v. Prouse, 440 U.S. 648 (1979) (acknowledging the States' vital interest in ensuring only

12   qualified drivers operate motor vehicles, but finding the checkpoint in question there unconstitutional

13   in its application).  But when a checkpoint's primary purpose is to "uncover evidence of ordinary

14   criminal wrongdoing, . . . [it] contravenes the Fourth Amendment." Edmund, 531 U.S. 41-42 ("We

15   decline to suspend the usual requirement of individualized suspicion where the police seek to employ

16   a checkpoint primarily for the ordinary enterprise of investigating crimes").

17   Here, the United States Border Patrol operates a fixed checkpoint on the westbound lane of

18   Highway 94 near Jamul, California.  The primary purpose of the Highway 94 Checkpoint is to

19   apprehend illegal aliens, alien smugglers, and narcotics trafficking.  The Highway 94 Checkpoint is

20   approximately ten miles west of the Tecate, California, Port of Entry and approximately three miles

21   north of the United States-Mexican border.  If followed due east, Highway 94 leads to San Diego.  The

22   Border Patrol has permanent marks on Highway 94.  As such, the initial stop of Defendants at the

23   checkpoint was valid, and therefore, did not violate the Fourth Amendment.

24                    **2.    Brief Continued Detention at the Checkpoint Was Valid**

25   As to the scope of checkpoint seizures, the Supreme Court has concluded that checkpoint stops

26   are per se constitutional "so long as the scope of the detention is limited to a few brief questions about

27   immigration, the production of immigration documents, and a 'visual inspection of the vehicle limited

28   to what can be seen without a search.'" United States v. Preciado-Robles, 964 F.2d 882, 884 (9th Cir.

1992) (quoting <u>Martinez-Fuerte</u>, 428 U.S. at 556)).  Thereafter, a "brief detention following valid immigration questioning is permitted so long as the government can prove 'an articulable suspicion or a minimal showing of suspicion.'" <u>Id.</u> (quoting <u>United States v. Taylor</u>, 934 F.2d 218, 221 (9th Cir. 1991)); <u>see also</u> <u>United States v. Wilson</u>, 7 F.3d 828 (9th Cir. 1993).  Any detention beyond this brief, "limited intrusion" would require consent or probable cause.  <u>Taylor</u>, 934 F.2d at 220; <u>see also</u> <u>United States v. Ortiz</u>, 422 U.S. 891, 896-97 (1975); <u>United States v. Koshnevis</u>, 979 F.2d 691, 695 (9th Cir. 1992).  The vehicle and its occupants may be selectively referred to a secondary checkpoint for further questioning without individualized suspicion.  <u>United States v. Martinez-Fuerte</u>, 428 U.S. 543, 563 (1976); <u>United States v. Wilson</u>, 7 F.3d 828, 833 (9th Cir. 1993).

Here, the continued detention of Defendants in the secondary inspection area was very brief. The entire conversation, including immigration related questions (status, where they entered the United States, whether they crossed the border), took only a few minutes.  Defendant contends that the agents lacked reasonable suspicion to ask her or her sister any questions or make further observations despite the fact that Defendant's sister was unable to provide adequate proof of citizenship. [Def Mot. at 15-18.] However, <u>Martinez-Fuerte</u> and <u>Wilson</u> hold that individualized suspicion is not required to conduct a further inquiry in the secondary checkpoint area.  As such, there was no Fourth Amendment violation, and therefore, the Court should deny Defendant's motion to suppress.

### 3.     <u>Border Patrol Agents Had Probable Cause to Search the Vehicle</u>

The Fourth Amendment does not require that police obtain a warrant to search an automobile when they have probable cause to believe it contains contraband or evidence of criminal activity. *See* <u>United States v. Ross</u>, 456 U.S. 798, 804-809 (1982); <u>see also</u> <u>United States v. Pinela-Hernandez</u>, 262 F.3d 974, 978 (9th Cir. 2001) (finding that police had probable cause to search vehicle because previous surveillance indicated likelihood that vehicle contained contraband.)  Probable cause is "a fair probability that contraband or evidence of a crime will be found in a particular place." *See* <u>Illinois v. Gates</u>, 462 U.S. 213, 238 (1983).

Here, Border Patrol Agents at the checkpoint learned from Defendant Bernice Pelayo-Hernandez that she had been contacted by a friend, named "Ramon/Eduardo" to work as a scout for alien smuggling.  Defendant Bernice Pelayo-Hernandez said her role was to drive past the Golden Acorn

Casino and let "Ramon/Eduardo" know whether the area was clear of Border Patrol and California Highway Patrol.   In addition, Border Patrol Agents performed records checks and learned that both Defendant Bernice Pelayo-Hernandez and Defendant Denise Pelayo-Hernandez had prior contacts for alien smuggling.  Based on the totality of these circumstances, Border Patrol Agents clearly had a basis to believe that there was a "fair probability" the vehicle Defendants were in contained evidence of alien smuggling.  As such, Border Patrol Agents search of the vehicle complied with the Fourth Amendment, and its exceptions, and therefore, the Court should deny Defendant's motion to suppress.

### D.      DEFENDANT'S MOTION TO SUPPRESS SHOULD BE DENIED BECAUSE THERE WAS NO VIOLATION OF THE FIFTH AMENDMENT

Defendant moves to suppress statements and requests that the United States prove that all statements were voluntarily made, and made after a knowing and intelligent Miranda waiver. Defendant contends that 18 U.S.C. § 3501 mandates an evidentiary hearing be held to determine whether Defendant's statements were voluntary.   Defendant's motion to suppress statements should be denied without an evidentiary hearing because she failed to allege a specific factual dispute, and failed to support her contentions with a sworn declaration as required by Crim LR 47.1(g).  As explained further below, the Government does not believe that a suppression hearing is necessary to prove admissibility; however, if the Court chooses to hold an evidentiary hearing on Defendant's Motion, the United States will prove that Defendant's statements were voluntary, Defendant was not subject to custodial interrogation, and the statements are, therefore, admissible.[1]

### 1.      Knowing, Intelligent, and Voluntary Miranda Waiver

A statement made in response to custodial interrogation is admissible under Miranda v. Arizona, 384 U.S. 437 (1966), and 18 U.S.C. § 3501 if a preponderance of the evidence indicates that the statement was made after an advisement of Miranda rights, and was not elicited by improper coercion. See Colorado v. Connelly, 479 U.S. 157, 167-70 (1986) (preponderance of evidence standard governs voluntariness and Miranda determinations; valid waiver of Miranda rights should not be found in the "absence of police overreaching").

---

[1] Defendant does not argue that any pre-arrest statements made by her should be suppressed, which they should not be because Defendant was not in custody at that time.  See Miranda, 384 U.S. 436 (holding that under the Fourth Amendment a person must be advised of his rights prior to questioning after custodial arrest); United States v. Butler, 249 F.3d 1098 (9th Cir. 2001) ("The sine qua non of Miranda is custody.").

1    A valid <u>Miranda</u> waiver depends on the totality of the circumstances, including the background,

2    experience, and conduct of the defendant. <u>North Carolina v. Butler</u>, 441 U.S. 369, 374-75 (1979).  To

3    be knowing and intelligent, "the waiver must have been made with a full awareness of both the nature

4    of the right being abandoned and the consequences of the decision to abandon it." <u>Moran v. Burbine</u>,

5    475 U.S. 412, 421 (1986). The Government bears the burden of establishing the existence of a valid

6    <u>Miranda</u> waiver. <u>North Carolina v. Butler</u>, 441 U.S. at 373.  In assessing the validity of a defendant's

7    <u>Miranda</u> waiver, this Courts should analyze the totality of the circumstances surrounding the

8    interrogations.  <u>See</u> <u>Moran v. Burbine</u>, 475 U.S. at 421.  Factors commonly considered include: (1) the

9    defendant's age (<u>see</u> <u>United States v. Doe</u>, 155 F.3d 1070, 1074-75 (9th Cir. 1998) (<u>en</u> <u>banc</u>) (valid

10   waiver because the 17 year old defendant did not have trouble understanding questions, gave coherent

11   answers, and did not ask officers to notify parents), (2) the defendant's familiarity with the criminal

12   justice system (<u>see</u> <u>United States v. Williams</u>, 291 F.3d 1180, 1190 (9th Cir. 2002) (waiver valid in part

13   because defendant was familiar with the criminal justice system from past encounters), (3) the

14   explicitness of the <u>Miranda</u> waiver (<u>see</u> <u>United States v. Bernard S.</u>, 795 F.2d 749, 753 n.4 (9th Cir.

15   1986) (a written <u>Miranda</u> waiver is "strong evidence that the waiver is valid"); <u>United States v. Amano</u>,

16   229 F.3d 801, 805 (9th Cir. 2000) (waiver valid where <u>Miranda</u> rights were read to defendant twice and

17   defendant signed a written waiver), and (4) the time lapse between the reading of the <u>Miranda</u> warnings

18   and the interrogation or confession.  <u>See</u> <u>Guam v. Dela Pena</u>, 72 F.3d 767, 769-70 (9th Cir. 1995) (valid

19   waiver despite 15-hour delay between <u>Miranda</u> warnings and interview). Furthermore, if there are

20   multiple interrogations, as occurred in this case, repeat <u>Miranda</u> warnings are generally not required

21   unless an "appreciable time" elapses between interrogations.  <u>See</u> <u>United States v. Nordling</u>, 804 F.2d

22   1466, 1471 (9th Cir. 1986).

23   Here, government agents scrupulously honored the letter and spirit of <u>Miranda</u> in carefully

24   advising Defendant of her <u>Miranda</u> rights prior to any post-arrest custodial interrogation.  Defendant

25   was advised of her <u>Miranda</u> rights, both orally and in writing, before the interrogation. Defendant orally

26   agreed to waive her <u>Miranda</u> rights and signed a <u>Miranda</u> waiver form.  Defendant's post-arrest

27   statements were videotaped.  Based on the totality of the circumstances, Defendant's statements should

28   not be suppressed because her <u>Miranda</u> waiver was knowing, intelligent, and voluntary.

1

### 2.  Defendant's Statements Were Voluntary

2      The inquiry into the voluntariness of statements is the same as the inquiry into the voluntariness

3  of a waiver of Miranda rights. See Derrick v. Peterson, 924 F.2d 813, 820 (9th Cir.1990).   Courts look

4  to the totality of the circumstances to determine whether the statements were "the product of free and

5  deliberate choice rather than coercion or improper inducement." United States v. Doe, 155 F.3d 1070,

6  1074(9th Cir. 1998)(en banc).

7      A confession is involuntary if "coerced either by physical intimidation or psychological

8  pressure." United States v. Crawford, 372 F.3d 1048, 1060 (9th Cir. 2004) (quoting United States v.

9  Haswood, 350 F.3d 1024, 1027 (9th Cir. 2003)).  In determining whether a defendant's confession was

10  voluntary, "the question is 'whether the defendant's will was overborne at the time he confessed.'"

11  Clark v. Murphy, 331 F.3d 1062, 1072 (9th Cir.), cert. denied, _ U.S. _, 124 S. Ct. 446 (2003) (quoting

12  Haynes v. Washington, 373 U.S. 503, 513 (1963)). Psychological coercion invokes no per se rule.

13  United States v. Miller, 984 F.2d 1028, 1030 (9th Cir. 1993). Therefore, the Court must "consider the

14  totality of the circumstances involved and their effect upon the will of the defendant." Id. at 1031 (citing

15  Schneckloth v. Bustamonte, 412 U.S. 218, 226-27 (1973)).

16      In determining the issue of voluntariness, this Court should consider the five factors under 18

17  U.S.C. § 3501(b).  United States v. Andaverde, 64 F.3d 1305, 1311 (9th Cir. 1995).   These five factors

18  include: (1) the time elapsing between arrest and arraignment of the defendant making the confession,

19  if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the

20  offense with which he or she was charged or of which she was suspected at the time of making the

21  confession, (3) whether or not such defendant was advised or knew that he or she was not required to

22  make any statement and that any such statement could be used against her, (4) whether or not such

23  defendant had been advised prior to questioning of his or her right to the assistance of counsel; and (5)

24  whether or not such defendant was without the assistance of counsel when questioned and when giving

25  such confession.  18 U.S.C. § 3501(b).  All five statutory factors under 18 U.S.C. § 3501(b) need not

26  be met to find the statements were voluntarily made.  See Andaverde, 64 F.3d at 1313.

27      As discussed above, Defendant was read her Miranda rights prior to her post-arrest interview.

28  Defendant explicitly stated that she understood her Miranda rights and agreed to waive those rights.

1  See United States v. Gamez, 301 F.3d 1138, 1144 (9th Cir. 2002).  Defendant's statements were not the

2  product of physical intimidation or psychological pressure of any kind by any government agent.  There

3  is no evidence that Defendant's will was overborne at the time of her statements.  Consequently,

4  Defendant's motion to suppress her statements as involuntarily given should be denied.

5  **3.    An Evidentiary Hearing Is Not Warranted**

6  This Court can and should deny (without prejudice) Defendant Pelayo's motion to suppress

7  statements without an evidentiary hearing because Defendant Pelayo failed to (1) allege a specific

8  factual dispute, and (2) provide a sworn declaration in support of her motion to suppress.

9  **(a)    *Defendant Failed To Allege a Specific Factual Dispute***

10  An evidentiary hearing is required if a defendant's motion to suppress and supporting

11  declarations or affidavits fail to allege a specific factual dispute.  See United States v. Walczak, 783 F.2d

12  852, 857 (9th Cir. 1986) (an evidentiary hearing is required "if the moving papers are definite, specific,

13  detailed and nonconjectural to enable the court to conclude that contested issues of [material] fact . . .

14  are at issue").  Where a defendant fails to provide a specific factual dispute of any material fact, the

15  Court is not required to hold an evidentiary hearing.  See United States v. Howell, 231 F.3d 616, 620-23

16  (9th Cir. 2000) (holding that "[a]n evidentiary hearing on a motion to suppress need be held only when

17  the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial

18  court to conclude that contested issues of fact exist."); United States v. Batiste, 868 F.2d 1089, 1093 (9th

19  Cir. 1989) (District Court is not required to hold an evidentiary hearing where "defendant, in his motion

20  to suppress, failed to dispute any material fact in the government's proffer"); United States v. Moran-

21  Garcia, 783 F. Supp. 1266, 1274 (S.D. Cal. 1991) (finding that the motion to suppress was "akin to

22  boilerplate motions that lay no factual foundation" and that the unsworn representations of counsel were

23  "too indefinite and conjectural to require the government to respond"); United States v. Feola, 651 F.

24  Supp. 1068, 1119 (S.D. N.Y. 1987), aff'd without decision, 875 F.2d 857 (2d Cir. 1989) (denying

25  motion for Miranda hearing to determine admissibility of confession where there was "no real allegation

26  of [] police coercion").

27  Defendant failed to specifically identify the statements that she seeks to suppress or allege any

28  specific factual or legal dispute regarding the admissibility of the statements.  Defendant did not allege

that the government agents failed to advise Defendant of her <u>Miranda</u> rights, that the <u>Miranda</u> rights provided were somehow defective, that her <u>Miranda</u> waiver was not knowingly, intelligently, or voluntarily made, or that the statements were involuntarily coerced by government agents.  In essence, Defendant Pelayo's motion to suppress is pure boilerplate and lacks sufficient definiteness, clarity, and specificity to enable the Court to rule on the motion or allow the United States to prepare for any motion to suppress statements.

### (b)  *Defendant Failed To Provide A Sworn Declaration*

This Court can and should deny Defendant's motion without a suppression hearing.  Under Ninth Circuit and Southern District precedent, as well as Southern District Local Criminal Rule 47.1(g)(1)-(4), a defendant is entitled to an evidentiary hearing on a motion to suppress only when the defendant adduces specific facts sufficient to require the granting of the defendant's motion.  <u>United States v. Batiste</u>, 868 F.2d 1089, 1093 (9th Cir. 1989) ("[T]he defendant, in his motion to suppress, failed to dispute any material fact in the government's proffer.  In these circumstances, the district court was not required to hold an evidentiary hearing."); <u>United States v. Moran-Garcia</u>, 783 F. Supp. 1266, 1274 (S.D. Cal. 1991) (stating that boilerplate motion containing indefinite and unsworn allegations was insufficient to require evidentiary hearing on defendant's motion to suppress statements); Crim. L.R. 47.1g(1) (stating that "[c]riminal motions requiring predicate factual finding shall be supported by declaration(s). . . .  The Court need not grant an evidentiary hearing where either party fails to properly support its motion for opposition.").

Here, Defendant Pelayo has failed to support her allegations with a declaration, in clear violation of Criminal Local Rule 47.1(g).  Moreover, Defendant Pelayo's brief allegations fail to establish a <u>Miranda</u> violation, clearly making it unnecessary to hold an evidentiary hearing in this case.  <u>Cf.</u> <u>United States v. Howell</u>, 231 F.3d 616, 620 (9th Cir. 2000) ("An evidentiary hearing on a motion to suppress need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist." (citation omitted).

Defendant does not dispute that no custodial interrogation occurred after Defendant invoked her right to silence.  Defendant does not allege coercion, threats, or promises induced her to make her statements.  Defendant does not allege that law enforcement officers violated her constitutional rights

by continuing to question her after she invoked. Defendant Pelayo's argument is that, because she made statements after she invoked, she is entitled to an evidentiary hearing. But Defendant does not allege that any form of interrogation occurred. "The fundamental import of the privilege while an individual is in custody is . . .whether he can be interrogated . . .Volunteered statements of any kind are not barred by the Fifth Amendment . . . ." Miranda, 384 U.S. at 478. Without interrogation, there can be no Miranda violation, and a voluntary statement is admissible. See Medeiros v. Shimoda, 889 F.2d 819, 825 (9th Cir. 1989); see also Batiste, 868 F.2d at 1092 (stating that Government proffer alone is adequate to defeat a motion to suppress where the defense fails to adduce specific and material disputed facts).

For all the reasons above, the Court should deny Defendant's motion to suppress statements.

**E.    LEAVE TO FILE FURTHER MOTIONS**

The United States does not oppose Defendant's request to file further motions if they are based on new discovery or other information not available to Defendant at the time of this motion hearing.

**IV**

**CONCLUSION**

For the foregoing reasons, the United States requests the Court deny Defendant Pelayo's Motions to Compel Discovery, Preclude Prosecution from Proceeding under an Aiding and Abetting Theory, Suppress Evidence, and Leave to File Further Motions, unless unopposed.

DATED: May 13, 2008.

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

/s/ *Joseph J.M. Orabona*
JOSEPH J.M. ORABONA
Assistant United States Attorney

1          UNITED STATES DISTRICT COURT

2          SOUTHERN DISTRICT OF CALIFORNIA

3

4   UNITED STATES OF AMERICA          )          Criminal Case No. 08CR0972-WQH
                                       )
5                  Plaintiff,          )
                                       )          **CERTIFICATE OF SERVICE**
6          v.                          )
                                       )
7   DENISE PELAYO-HERNANDEZ (3),       )
                                       )
8                  Defendant.          )
    _____)

9

10          IT IS HEREBY CERTIFIED that:

11          I, Joseph J.M. Orabona, am a citizen of the United States and am at least eighteen years of age.

12   My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

13          I am not a party to the above-entitled action.  I have caused service of **The United States'**

14   **Response in Opposition to Defendant's Motions to Compel Discovery, Preclude Prosecution from**

15   **Proceeding under an Aiding and Abetting Theory, Suppress Evidence, and Leave to File Further**

16   **Motions** on the following parties by electronically filing the foregoing with the Clerk of the District

17   Court using its ECF System, which electronically notifies them.

18          Holly S. Hanover, Esq.
19          Law Office of Holly S. Hanover
            1016 La Mesa Avenue
20          Spring Valley, California 91977
            Tel:  (619) 295-1264
21          Email: netlawyr@aol.com
            *Lead Attorney for Defendant*
22
    A hard copy is being sent to chambers.
23
            I declare under penalty of perjury that the foregoing is true and correct.
24
            Executed on May 13, 2008.
25
                                       /s/ **Joseph J.M. Orabona**
26                                     JOSEPH J.M. ORABONA
                                       Assistant United States Attorney
27

28